314-0821 Autobahn Company, Inc. v. SUD Family Limited Partnership Defendants Applicants by Stephen Winkman, Inc. Commons Bank National Association Defendants Applicants by Trenton Vaughn Mr. Winkman? I apologize for my dramatic entrance. May it please the Court, Counsel? My name is Steve Winkman. I represent Guillaume SUD, Nancy SUD, the SUD Family Limited Partnership, and SUDs of Peoria, collectively referred to as the SUD Defendants. This is a case that was tried by a judge who rendered his decision on his last day on the bench before retirement. Unfortunately, his attention to the law and evidence seems to have been somewhat distracted because his decision contains numerous errors which we say requires reversal. I'm going to talk about three or four of those major errors depending on time. First, let's start with the Commerce Bank judgment, a judgment that is clearly erroneous and cannot stand. The Court entered a judgment against the SUD Family Limited Partnership, Guillaume and Nancy SUD, for $696,981.49. Commerce Bank purchased Lot 1 from the SUD Family Limited Partnership for $469,000 after Autobahm's Mechanics Lands had been filed. Commerce was then sued by Autobahm as the owner of Lot 1 on a complaint to foreclose on Autobahm's Mechanics Land. Commerce Bank filed a third-party complaint, or counterclaim as they called it, against the SUD Defendants alleging that Autobahm's Mechanics Land created a lien or encumbrance against the title to their property and was a breach of the sales contract and a breach of warranties under the deed. If Autobahm's underlying Mechanics Land is invalid, then Lot 1 was never encumbered by a valid lien. If the lien is invalid, then Commerce is not liable to Autobahm, and if it is not liable to Autobahm, then all of Commerce Bank's causes of action against the SUD Defendants necessarily fail. Commerce Bank's claims are all clearly derivative of the validity of Autobahm's Mechanics Lands. The first problem with the Commerce judgment is that it gives Commerce Bank a $469,000 windfall. Commerce received a refund of $469,000 purchase price plus $46,500 that was paid by Chicago Title to settle with Autobahm and buy a release of Autobahm's Mechanics Land and recovery of its attorney's fees and costs, which totaled some $227,981.49, thereby arriving at the total of $696,981.49. Plus, Commerce Bank was allowed to keep Lot 1. The result is that the SUD Defendants must pay nearly $700,000 to Commerce and they lost their property, causing a $469,000 windfall to Commerce and a forfeiture of Lot 1 by SUD with no compensation for the value of that lot. The second problem with the Commerce judgment is that the Commerce Bank claims in this case are in reality subrogation claims. The real party in interest here is Chicago Title, not Commerce Bank. Section 2403C of the Code of Civil Procedure requires that the real party in interest be disclosed. Either the real party in interest, Chicago Title, must either be named as the plaintiff or the suit brought in the name of the plaintiff seeking recovery for the use and benefit of the subrogate, Chicago Title. That was not done in this case. Chicago Title was never named and never disclosed until the middle trial. This is significant because this scheme was designed to hide the fact that Commerce Bank actually sustained no damage. Here, Chicago Title settled with AutoBahn and bought a release of the mechanics lien for $46,500. Chicago Title paid the attorney's fees to defend Commerce and defend its title. Incidentally, the SUD Family Limited Partnership paid for the premium at closing for Chicago Title's policy, which essentially paid Commerce Bank's attorney's fees to defend Title and to defend them in this cause. So in a real sense, the SUD Family Limited Partnership has paid to defend Commerce Bank's title to Lot 1. Commerce received clear Title to Lot 1 and has incurred no attorney's fees. It has paid nothing toward the settlement, toward the attorney's fees, or toward the cost of clearing Title. All of those things were paid by Chicago Title. In short, Commerce Bank has sustained no financial damage whatsoever in this case. They did have to pay the release, $46,000. Yes, Chicago Title paid that. Then, of course, Commerce Bank received that. They had to reimburse the Title Company. They released AutoBahn and that was paid as part of the policy. Well, Commerce Bank is not reimbursed. So they got that. That was paid by Chicago Title. And then the $46,000 that was paid to AutoBahn to release this was paid to the Title Company. Paid by the Title Company, Your Honor. Yes. So since there were no actual damages sustained by Commerce Bank, the judgment for the $469,000 refund of the purchase price clearly was not justified. We have cited a case in our brief, Walker v. Ridgeview Construction, which I think is controlling and directly on point. There's no contrary authority that's been cited by the opposing side. And I believe that that Walker case is really spoiling on point in which a judgment was reversed in which the same thing was done. There was a subrogation action that was not brought but should have been brought. And after the judgment, they petitioned to convert this to a subrogation action. But ultimately, the court said there were really no damages sustained here by Walker. And ultimately, since there were no damages, the court basically reversed saying a subrogation action is not the same thing as a breach of contract action. The proofs are different. And there was a reversal which we believe is appropriate in this case. On the Commerce Bank matter, before I turn to the other arguments, I would just like again to point out that if Autobahn's mechanics liens are invalid, or if the one regarding the roadway is invalid, then Commerce is not liable to Autobahn and there would be no lien on Lot 1. And therefore, Commerce Bank's third-party claims or counterclaims, whatever you want to call them, must fail. The second major legal error that I want to talk about involves Autobahn's mechanics liens. First, the mechanics lien for the roadway construction is clearly invalid because there was no work actually performed on Lots 1 through 5. All of the work was performed on the road or beneath the roadway. It is well-settled law in this state that work done on a road or a street does not permit a contractor to claim mechanics lien against adjacent lots. There has to be work on the property itself. Again, the abutting property. Not the abutting property. On the property, yeah, there has to be work on the abutting property, which I mean the property itself, not under the road. Now, that would include curbing, grading, paving the street, installation of water lines or water mains, the type of thing that was done here. We have cited two Illinois Supreme Court cases and two more recent appellate cases directly on point. The trial court refused to follow these cases, which have been time-honored going back to the 1800s, thinking that this case was distinguishable because the Sioux Family Limited Partnership originally owned all the land. However, neither the trial court nor Adelbaum has cited any case to indicate that there is an exception to this line of case law, which we think is still good law. I submit the trial court's ruling is erroneous. We found no support for a distinguishment. Again, none of the work was performed on the abutting properties that would justify imposition of a mechanics lien. The second problem with both of the mechanics liens, the reason both of these are invalid, is because they fail to contain a brief but accurate description of the contract in the recorded claim of lien. Both of the recorded liens claim that work was done under written contracts, but the court specifically found that no written contracts existed. The court also found that... Does it matter whether it was written or verbal? I mean, isn't there a pretty good argument that with respect to Parkway, that was an unsigned written contract, and it appears to be with the Sud dealership, who doesn't, never owned... That's right. So does it matter whether the agreements were verbal? If that agreement... Everybody agrees it was an unsigned contract. If that agreement was a verbal contract, it appears there's evidence that it was between the dealership. The dealership was going to pay for the road, even though they didn't own the other lot. You raise an excellent point, Justice Wright. The problem with that is that the basic elements that must be set forth in a recorded mechanics lien, those have to be strictly construed. And one of the things that needs to be done is a short, concise statement as to what the contract consisted of. But it doesn't have to be a written contract. It does not have to be, but here they misidentified this as a written contract and said this is what it is, but clearly it was never a written contract. My client never even saw this proposed written contract. Undisputed, he didn't sign it. It's not disputed he didn't sign it. There was no evidence to indicate that he'd seen it other than inferentially somebody said, well, we sent it to him. And there's other theories in the complaint for Quantum Merowith. He accepted the benefit, but that's different from the mechanics. That's correct. And then the other lien is based on a letter that was drafted, but was never acknowledged. That's right. That's exactly right. How do you have an agreement? I mean, I can think of a lot of agreements I would like to make by sending a letter to someone. So can I. And that letter was drafted, I believe, or sent September the 10th. And all of the work that had been performed that they are claiming as a basis of their lien was performed before that letter was even sent. So the problem is, again, the mechanics lien statute is to be strictly construed as far as meeting the three specific requirements as to what you have to set forth. And the purpose of that is to give notice to the property owner to have some basis to determine whether there's any presumptive validity to the claim of lien or not. And this does not provide that kind of notice. Thank you. There is another major problem with the trial court's conclusion that the Suit Family Limited Partnership entered into an oral contract with Otto Baum because it was, the court found there was no direct oral contract, only an oral contract that was created through an agent. In this case, STS Consultants, or as the court said, by Lee Austin, Don Hemphill, or some other unnamed representative of STS. The problem is there is nothing that is pled in the complaints that allege that STS Consultants was an authorized agent, or anything to say that what STS allegedly did that could form an oral contract with Otto Baum on the part of Suit Family Limited Partnership. It's elementary that a plaintiff cannot recover on a theory that is not set forth in a complaint. Proof without pleadings is just as defective as pleadings without proof. The pleadings, as we all learned in law school, form the issues for trial. The Otto Baum judgment cannot stand because the plaintiff did not allege the existence of any oral contract between STS Consultants or any actions on their behalf acting as an authorized agent of the Suit Family Limited Partnership. Otto Baum ignores this in their brief, claiming that Suits of Peoria was the agent, but that's not what the trial judge found and based his decision on. He found that STS Consultants entered into these transactions with Otto Baum and formed a contract for the Suit Family Limited Partnership. There was undisputed testimony from the folks at STS Consultants that they had no authority to approve this work or enter into a contract with Otto Baum for any of this work. As to Lot 5, it goes even worse because there the trial judge went not only STS Consultants but Michael Bryant or Methodist Services was allegedly some type of agent. There's not even a mention in any of the complaints about Michael Bryant or STS Services. Thank you. Otto Baum has simply failed to point to any allegations of agency by Mr. Bryant, Methodist Services, or STS Consultants that could form the basis for allegations for the formation of an oral contract. And for these reasons, we believe the judgment is clearly erroneous and we ask that all of the judgments be reversed. We believe since there were no pleadings on the oral contract counts, there should be no remand. Alternatively, if the court sees fit to find some remand, then there should be the other alternative counts that the court did not reach. But the mechanics liens are clearly defective. If those are no good, then the Commerce Bank judgment is also no good. Thank you. Mr. Wentworth, will you be first? Yes. May it please the court and counsel and the principals of the parties who are also here in attendance. My name is David Wentworth and I represent Otto Baum Company, Inc. After a 13-day bench trial, there are no issues raised on appeal regarding the admissibility of any evidence as it relates to the contract and mechanics lien counts upon which the judgments were entered. Every factual finding made by Judge Galley from the bench was well reasoned, carefully considered, and supported by that uncontested on appeal evidentiary record. Judge Galley, yes, it's his last day. He's on the bench on July 2nd, but he had started this case on March 13th. And during the course of the trial, it had been pointed out that once a judge starts a case, even a bench trial, that judge has to finish the case. Otherwise, you start over. So the parties and the court went through great efforts to complete the case on time. Judge Galley weighed the evidence, assessed witness credibility, especially with regard to Mr. Seward, and found overwhelmingly in favor of Otto Baum on contract formation, the terms, the full performance of the work, the acceptance of the benefits of the work, and the amount due. What about the technical requirements of the Mechanics Lien Act? Were they complied with? Absolutely in all respects. I mean, that's the complaint of your opponent. Correct, and I will jump to that right now. Because there are very – you know, Mechanics Lien cases can be four stories for members of the bar. Correct. About filing, naming everybody, following everything to the letter, right? Correct. And so he raises in his briefs a number of issues with the claim that things are defective, just openly defective. Correct. On the Mechanics Lien, they are not defective. First of all, regarding the roadway contract, which was based on the standard form AIA contract that was unsigned by Dr. Seward. That document included an Exhibit A, which had bid and unit prices, and the extension of exactly how much materials and how much it was going to cost. Judge Galli specifically found that that document was a perfect summary of everything that Autobahm did. So even though they are all contracts, the lien never says that the roadway contract was written. It says that we entered into an agreement. The Lot 5 lien does use the word written, so there's a distinction between the two liens. One includes the word written in the lien, the other does not. As for the roadway lien... What's the impact of that? Under the North Shore case, North Shore Bank, Community Bank, not much, because the document that was attached to the lien is a written proposal with a scope of work, a price, what was done, and that just is an evidence of the parties or the grant because it was unsigned. So you can have a writing that typically you would think would be fully executed and delivered, signed by everybody, but just the word writing, the North Shore Community Bank case found, was superfluous, or I don't see that word well. The case you're relying on, and you've been relying on for the proposition that written is not, it doesn't mean it's a signed written contract, it's just that the judge went by a written recitation of what in fact was the actual oral agreement reached by the parties. Correct. In effect, the liens included a document, an unsigned document. That document set a goal or set what we had to be judged by, whether we performed work. During the course of the trial, through the voluminous 180 exhibits that we had, 86 that they had, the business record testimony, everything was connected to show that we did the work pursuant to those unsigned documents, unsigned contracts. Can I go to page 489 of the appendix, just for the record? It's exhibit I. It's the mechanics lien, I think, pertaining to the road, if I could be wrong. The amount is $300,074, is that the road? I believe that's the road, yes. It says it's a subcontract agreement between owner, and I presume it has to be the owner of the land, and the contractor, between Audubon Company, Inc. and the subs of Peoria, Inc. Correct. It's not the family trust or whatever it was. So you're stating an agreement with an owner that doesn't own the land. Correct. Can you speak to that? Yes, under the standard form AIA contract by the American Institute of Architects, I believe, the person that is contracting is designated as the owner of the improvement. So not necessarily record title or owner of the land, like we would think under the Mechanics Lien Act. Section 1A of the Mechanics Lien Act provides that any person who does a contract with the owner of a land, so that would be sued family limited partnership is the owner of the land, and that's what that lien also says, or with one whom the owner has authorized or knowingly permitted to contract. So Sueds of Peoria, Inc. is the car dealership that the 40 acres was acquired in the first place to build. Yes, but they didn't acquire. Family trust did.  The limited partnership, correct. Thank you. Yes, correct. The first contract that was fully executed and delivered, was fully signed, was between Autobahn and Sueds of Peoria, Inc., and that was for the initial rough grading of the work. This roadway was then to go in second, and so the form was used, cut and pasted, the same entity, Sueds of Peoria, was going to do this one too. So that's the document that Autobahn had. What we were able to prove at trial, and the trial court made specific findings, is that Gein and Sued controlled all of these entities. They were essentially one and the same, and that any contract entered into by an agent is a contract entered into by its principal. Sueds of Peoria was the authorized agent of Sued Family Limited Partnership. We alleged that in the complaint. We proved that in the case. So as to Sueds of Peoria, Sued Family Limited Partnership by its authorized agent, that's paragraph six of our roadway complaints. The roadway complaints and the lot five complaints were answered by the sued defendants. They are now claiming on appeal for the very first time that there are defects in the pleadings. When you answer a complaint, you waive all rights in that regard. With regard to the water products case. That family is saying that they thought, with regard to the road, they thought it was the core contract. Correct. They say they had no dealings with the OVCI. Correct. Justice Carter, the AIA contract for the roadway established what is common parlance as an owner's representative. It established STS. STS Consultants was identified in that document as the owner's representative on the front page of the unsigned contract for the roadway. STS Consultants was involved in preparing and is the intermediary between the Sued Family Limited Partnership and Autobahn. Although STS didn't have authority to sign a contract or to unilaterally direct work, they were authorized and the court expressly found that they were authorized to relay information. To say to the owner, Autobahn was the road bid. We're going to have you prepare a contract. Autobahn has worked. Oh, here's the pay request first one. We find it in order. Here it is for you to pay. They paid the first four pay requests out of seven. Sued Family Limited Partnership. So, again, the standard form AIA contract and the proposal for lot five were the targets that were alleged in the complaints that we were going for. We never, this case, this issue would not be on appeal if I had used a fourth letter word in each complaint and said the word all. Otherwise, so if I am granted leave, which I have asked for to modify the pleadings to conform to the proofs, what it would be would be adding the word all because the complaints that were answered and, therefore, all defects in it are waived, but the complaints themselves on their face by the attachment of the unsigned contracts clearly showed that we weren't relying on a fully integrated, fully signed and executed contract. Now, you mentioned in response to one of the questions from Justice Wright, as I understand it, the principles in the various entities from the sued family are the same principles. Correct. Correct. And so, in part, what you were relying on for the effectiveness of your claims is they might have separated out certain things, but they were all the same. It was all the same. Correct. And that's allowed under Section 1A of the Mechanics' Lien Act. And that's what we're deriving from one section. Correct. So, pursuant to that section, since the principles of the different entities were the same, claiming they were separate is really not legally effective. Correct. Correct. Correct.  And I think the other thing that he was alluding to, that you can't lien a road, there was no road. This was a 40-acre virgin land that was undeveloped. The water products case and all the other cases say that once there is a road that has been dedicated to the public and accepted by the municipality or the village, then the lien is suspect unless it connects to, attaches, or does work onto the adjacent lots. Here, we're the ones that built the road, so the water products case is distinguishable on that factor alone. In closing, this was a very lengthy trial that the court took very seriously and the parties took very seriously. The court made very specific factual findings that support the existence of the oral contracts, the existence and validity and enforceability of the Mechanics' Liens. We therefore request that the court affirm in all respects to the extent that the court believes that the pleadings-proofs issue has merit. I know that Supreme Court Rule 362 requires me to go on record and file my proposed amendment before the case is proceeded for disposition. Since that happens now, to the extent that that is a solution to this issue that the court deems appropriate, I would request a leave to be able to do that even after today. Thank you. Thank you. Mr. Bond? Yes, thank you. You may proceed. May it please the court. My name is Trent Bond and I represent Commerce Bank in this matter. Your Honor, judgment was entered in favor of Commerce Bank on July 2nd, 2014 on its claims against appellants relating to the sale of real property by appellants sued Family Limited Partnership to Commerce Bank. You know, your opponent's claiming that you're getting a double windfall. They are claiming that and I disagree with that statement and the court clearly disagrees. You got this money, you got the land, you got everything. That's their claim and the trial court, after hearing the evidence and the testimony and the documents, decided otherwise and decided that Commerce Bank was entitled to the judgment that it received. Specifically, the testimony and evidence at the trial was clear that Commerce Bank relied on a representation made by sued Family Limited Partnership at the closing of the sale of Lot 1 to Commerce Bank that the lien claim of Auto Bomb had been resolved and fully settled and even produced a signed release at the closing which the court found induced Commerce Bank to purchase and pay sued Family Limited Partnership $469,000 for this property. Obviously, as we know now, the release was not recorded, although it was represented at the time that it was to be recorded that it was the only thing left to do. Thereafter, just a few months later, Commerce Bank is sued by the holder of that mechanic's lien, Auto Bomb, and finds itself a defendant, not a third-party defendant, as the appellants have argued, a defendant, in this case, whose claims are independent of those of Auto Bombs, and the sufficiency of those claims are not dependent on those of Auto Bomb because Commerce Bank has its own claims relating to what happened that day at the sale of this property. The title insurer, I mean, they were able to insure over that they paid for the defense, so when you make your claim for damages and you want to be made whole, you've been made whole, and it appears whole plus. I mean, you have the property, you have a clear title, and now you have a refund check for property that you continue to own. I don't know that you can put all of that in a basket when you're doing specific performance, but that has been provided. You got what you bargained for, and in addition, you got your purchase price back. Well, and that was the issue for the trial court, to resolve that matter, and it did so in favor of Commerce Bank, and Commerce Bank had alleged breach of purchase agreement, breach of warranty, and fraudulent misrepresentation, and the court found that Commerce Bank was entitled to those damages because essentially, although it paid all of this money to Sioux Family Limited Partnership for property that it believed was to be free and clear of any mechanics liens, and then Sioux Family Limited Partnership had the funds in its pocket to pay Auto Bomb, but did not, Commerce Bank was then stuck in a lawsuit for seven years with property encumbered by a mechanics lien in a first lien position who was seeking to have Commerce Bank's title of that property stripped. So what Commerce Bank ends up with is a vacant lot that it can't develop, it can't sell, it can't do anything with because it's encumbered still by the lien claim of Auto Bomb despite Sioux Family Limited Partnership's representation at the closing that that's not what you're going to have. I'm going from here to the recorder's office and are going to satisfy what I've said here today by reporting this release, but they failed to do so. The issue of the title insurer is that although the title insurer paid for the loss under the policy, the policy provided that its recovery was limited, that it would only recover the loss paid and that anything over that loss is entitled to Commerce Bank. And Commerce Bank in this case had its loss in that it received this essentially valueless property and that it could do nothing with for all this time and invested all of this substantial money into it that it wasn't able to get back because it was encumbered by the lien claim. For a period of time you're talking about. For several years. Recently I asked a question about the claims of double recovery. What was the cause of action that you brought? It was a contract claim, wasn't it? Well, there was a contract claim, also a breach of warranty, but also the fraudulent misrepresentation claim. Okay, and the judge made no findings about the fraud. Did the judge? No, I believe that the judge did find that misrepresentations were made at the closing that then induced Commerce Bank. I think that the transcript from the day that the judgment was entered does make clear that he did find. The transcript says the judge made a fraud finding. I think if you read exactly what the judge said, I think that you pull from there that he was finding in favor of Commerce Bank. I mean, I'm being very simplistic about this, but so your complaint consisted of three counts? Well, there was different breaches of the warranty, but if you lump those as one, and then the breach of the purchase agreement, and then the fraudulent misrepresentation. In your complaint, how many counts were there? I believe there were, if I'm thinking correctly, I think there were seven. Okay, so you had seven counts. Did you have seven prayers for relief? Yes, we did. Okay, and the prayers for relief, some stood in contract, right? Yes. Were the fraud counts based on a contract type of claim, or you were making contract claims on the fraud counts, right? On misrepresentation? Well, I think the misrepresentation, I think they were made as tort claims. Yes. And what did you request for damages? I don't have it in front of me right now, Your Honor. I think what we asked for was... Did you ask for punitive damages? We may have. I'm sorry, I didn't look at that before this morning or this afternoon. The reason I've got these questions is because the judgments have to relate to the causes of action, and there's very distinct differences between claims in tort, claims in contract, and this goes to the types of recovery you're entitled to. I mean, for the contract damages, you'd have problems with double, triple recoveries, right? In contract actions. I mean, you've only suffered one kind of loss. So then there's other kinds. You're talking about time period loss, so you're claiming that was a loss. So you lost money that you recovered, but also the fact that it was all these years was a loss. Is that an allowable damage in any of the counts that you... Well, I certainly think that was a breach of both the warranty and the purchase agreement, which required that they deliver a free and clear... It's not a question about the breach now. It's a question about is that time period an allowable damage in the causes of action that you raised? Well, I think it can be stated that it is because what they promised on the day of the closing was different than what they gave, and what they gave we had for several years thereafter during the course of the litigation in this matter. I'm not trying to overdo it, but there are specific enumerated aspects of damages in different claims, and that's the reason for the questions. I believe it's time, so if you'd like to make a closing remark. Oh, thank you, Your Honor. Well, I would just state in closing that, again, Commerce Bank's claims were not dependent on the validity of Audubon's claims as argued by the appellants. The issue at the closing that day wasn't the validity of a mechanics claim. It was the fact that a mechanics claim was against the property, even though it was represented to Commerce Bank that the matter had been resolved and settled. Commerce Bank had its own independent claims against the appellants relating to that representation for breaches of warranty and breaches of the contract, as well as the fraudulent misrepresentation. So for those reasons and for the reasons that the trial court has found, we would ask the court that the Commerce Bank judgment be upheld. Thank you. Thank you. Mr. Wakeman for rebuttal. Thank you, Your Honor. As to Commerce Bank, two of the justices asked the question as to, basically, what about this windfall? And I didn't hear any kind of a sufficient answer. The clear implication of this is that Commerce Bank has not only been made whole, but has received a windfall. They're to receive approximately $700,000 in damages from my client. They have clear title to a piece of property. They continue to own that piece of property. They have a $469,000 windfall. Well, it all depends on how these accounts were styled. I mean, you claimed that the judge didn't make a fraud. He fell short. I don't know if the – and you showed on a record page, 2603, that it fell short of finding fraud. It found breach of warranty, but not fraud. That's your claim. That's correct, Your Honor. He did specifically say a number of things, but he stopped short of actually making a finding. So it's how you parse these words on that. Yes, but I think the words fraud are kind of a – there was no conclusion. There was nothing to indicate that this was fraud. He did find a number of things which were relevant to findings under the other counts. They would argue that some of those enumerated things were necessary for the fraud finding. And they may be applicable to both, but he did not make a finding that there was any fraud. There were no punitive damages requested. There were no punitive damages awarded in this case. All of the counts are derivatives here. Commerce Bank, they are totally dependent upon the validity of the mechanics lien as to the roadway. I think Commerce Bank's argument was that at the real estate closing, they didn't ask whether or not it was a valid lien. They asked whether or not it was going to be released, and it was represented to them by saying, yes, I have a signed release, that it was going to be recorded. So from their perspective, whether or not these are valid had nothing to do with the fact that a lien encumbered that property when they had been told that it was not going to. Well, with all due respect, Your Honor, all of the counts presuppose the validity of a mechanics lien. Yes, there had been a filing of a mechanics lien, but that doesn't necessarily mean that the filing is a valid mechanics lien. If the lien was not valid, then this lot was not encumbered. If this lot was not encumbered, then Otto Baum did not have a judgment or could not obtain a valid judgment against Commerce Bank. If Otto Baum cannot obtain a valid judgment against Commerce Bank, then Commerce Bank's claims against the suit defendants, which are all alleging that there has been some type of a breach that has occurred, or some type of a violation by reason of the existence of an encumbrance, it's purely derivative. If the mechanics lien is invalid, then there was no encumbrance, and suit cannot have breached any of these things, whether it's a contractual lien. You don't buy property to buy into a lawsuit for seven years. Normally you don't do that. Can you ask for assurance that there aren't any claims? Yes, and we provided at our cost, we purchased the title policy, which has insured the title of that property, provided clear title. And also you assured them that there weren't claims. That's true, because we believe at the time that this case had been settled without a Baum and a resolution had taken place. But that assurance wasn't correct. It proved to be incorrect when the settlement blew up weeks later. So isn't that a problem for you? Because you're making it that it's only the ultimate time period that we're concerned about. No, you made an assurance at the closing that there was no claim. That was incorrect. We believe that to be true. We told them that, and that's why there was no fraud here, because the statements made at the time they were made were believed to be true. Let's talk about measure of damages. Okay, there was a claim on the property. It was misrepresented that it would go away. The damages are the $46,000 it took to remove that. I would agree. So how do you turn $46,000 into $46,000 plus $200,000 for attorney's fees? That's where the mechanics lien act comes in. Because you don't get attorney's fees just because somebody was mistaken. That's correct. And if the mechanics lien is not valid to begin with, then you can't recover the attorney's fees. And there's no $46,500 that needed to be paid because the mechanics lien was invalid to begin with. We go back to Justice O'Brien's question about you can't put all these things in the basket. Well, if you think they misrepresented the status of the property, then the measure of damages, if you want to keep the property, is what it takes to make them whole. And that was $46,000. I completely agree with Your Honor. I completely agree. So this is really, as far as Commerce Bank is concerned, driven by attorney's fees. I said that. You didn't. Thank you. Thank you both for your arguments here today. Mr. Wentworth, you asked for a leave to file. And I'm sorry, I didn't. I'm standing before to approve. I think that needs to be in the form of something in writing to us. May I respond to that request? Yes. And I was going to say that it would be in writing, and then you'll have an opportunity to reply to that in writing to this court. And then we'll take that matter with the case, and you'll have how much time would you like to have? Typically seven to ten days. Whatever you decide, Justice O'Brien. That would be fine. Give you ten days, and then you'll have an additional ten days to reply. I did ask for that relief in the alternative based on the decision, but I will front-load it now based on what the court says. I think that is probably appropriate. Did the trial court rule on that request? Did you make that request in the trial court? It wasn't raised in the trial court. Okay. All right. All right. All right. Thank you. I want to thank you both for your arguments here today, all of you for your arguments here today. This matter will be taken under advisement. A written decision will be issued to you as soon as possible. All right.